1
2
3
4
5
6
7

8      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
9                  AT TACOMA

10  UNITED STATES OF AMERICA,

11              Plaintiff,                    CASE NO. C10-2044BHS

12       v.

13  DEREK HOYTE and COLUMBIA                  ORDER GRANTING
    CREST PARTNERS, LLC,                      PLAINTIFF'S MOTION FOR
14                                            TEMPORARY RESTRAINING
                                              ORDER
15              Defendants.

16

17
        This matter comes before the Court on Plaintiff's (the "United States") *ex parte*
18
application for temporary restraining order ("TRO") (Dkt. 1, Ex. 4).  The Court has
19
considered the pleadings filed in support of the motion and the remainder of the file and
20
hereby grants a temporary restraining order for the reasons stated herein.
21
                    **I. FACTUAL AND PROCEDURAL BACKGROUND**
22
        On December 22, 2010, the Court held a hearing on this motion. Both parties were
23
represented. The Court also heard testimony from Defendant Derek Hoyte. This order
24
supplements the oral ruling made during the hearing.
25
        This matter arises out of the United States's allegations that Defendants are
26
misusing property within the confines of the Columbia River Gorge National Scenic Area
27
("CRGNSA"), specifically a portion designated as a "Special Management Area." *See,*
28

ORDER - 1

*e.g.,* Dkt. 1 ("Complaint") ¶ 4. The parcel of property primarily at issue is located at 22962 State Highway 14, Washougal, Washington, in Skamania County (the "subject property"). Defendants own the subject property, which is itself subject to a conservation easement held by the United States. *Id*.

In 1995, the Grams (owners of the subject property prior to conveyance to the Defendants) entered into a Conservation Easement Deed with the United States whereby they conveyed to the United States an interest in the land which granted a perpetual easement running with the land. *Id*. ¶ 7. This easement is subject to and contains specific limitations on the uses to which the property could be put thereafter. *Id*. The conveyance included, among others, the following provisions:

> a. record title;
> b. the right to use the property in ways that were consistent with current or past agricultural uses;
> c. the right to use and maintain in the same location and of the same dimensions all existing structures relating to current agricultural uses;
> d. the right to use and maintain the existing roads across the property;
> e. the right to gather and cut naturally dead and down timber for firewood and domestic uses and to eliminate direct safety hazards to existing structures.
>
> ***
>
> Pursuant to Part IIIA of the Conservation Easement Deed, it was established as a "general purpose" of the easement to preserve and maintain the regular uses of the property as they existed at the time the easement was placed on the property.
> Pursuant to Part IIID of the Conservation Easement Deed, public use and entry was not to be permitted on the property.
> Pursuant to Part IIIH of the Conservation Easement Deed, all rights, title and interests in the property not expressly and specifically reserved by the grantor were deemed to be acquired by the United States, and all uses of the Property not specifically reserved in the Conservation Easement Deed "shall be deemed prohibited."
> The rights conveyed to the United States under the Conservation Easement Deed run with the land and constitute a perpetual servitude on the Property.

Complaint ¶¶ 9-13.

In 2005, the Grams conveyed their interest in the subject property to Defendants. Paragraph 10(C) of the purchase and sale agreement expressly provides that the "[p]roperty is encumbered by and subject to a **Conservation Easement Deed** . . . . This constitutes a restriction upon the use(s) of the [p]roperty . . . ." Dkt. 2-1 (copy of purchase

ORDER - 2

and sale agreement, bolding in original). Derek Hoyte signed the purchase and sale agreement between Defendants and the Grams. *Id.* at 21 (signature block of contract).

The following violations of the conservation easement are alleged to have occurred in 2008:

> On or before December 16, 2008, defendant Derek Hoyte, and others acting on his behalf, without the permission of the U.S. Forest Service or the County of Skamania, cleared new roads and trails, graded and excavated, installed culverts, cleared brush, cut down and limbed live trees, created a parking area, and erected approximately five "ziplines" with associated structures including brakes, pulleys, cables and platforms. These activities were conducted so that defendants could operate a commercial enterprise on the Property, advertised broadly and openly to members of the general public, called "Zip the Gorge." These activities were conducted not only on the Property but also on adjoining land owned in fee by the United States.

*Id.* ¶ 15.

Believing that these activities violated certain codes and ordinances in the County of Skamania, the Skamania County prosecutor took action against Defendants. *Id.* ¶ 17. As a result of that action, on or about February 12, 2009, Defendants stipulated to a temporary restraining order from engaging in the disputed activity, discussed above, until the proper permits were obtained. Dkt. 2-8 (copy of stipulated TRO).

Thereafter, Defendants submitted applications for specified activities on the subject parcels, each of which were denied for being inconsistent with the terms of the conservation easement. Complaint ¶ 18. Nevertheless, Derek Hoyte was later held in contempt and thereafter served jail time for violating the stipulated restraining order. *See* Complaint ¶¶ 19, 20. The United States alleges that Hoyte had ceased violating the order and the easement until or around September 15, 2010. Complaint ¶ 24.

However, the United States now alleges as follows:

> On or about September 15, 2010, a consultant for defendant Hoyte submitted to Skamania County a proposed work plan for the construction of a suspension bridge on the Property. Neither the Skamania County or the United States Forest Service have given final approval to defendant Hoyte for the construction of a suspension bridge.
> On November 11, 2010, the United States Forest Service received a report that a zipline or ziplines had been reinstalled on the Property. A subsequent site visit confirmed this to be the case.

ORDER - 3

> On or about November 12, 2010, the United States Bankruptcy Court entered an order of discharge in defendant Hoyte's bankruptcy case under Chapter 7 of the bankruptcy code.
> On or about November 15, 2010, a Hearing Examiner in Clark County ordered defendant Hoyte, doing business as "Heritage Farms Canopy Tours," to cease operations and remove ziplines from a 5 acre parcel in Washougal, Washington, because he had failed to apply for or obtain necessary permits from the County. The Hearing Examiner also reportedly fined Defendant Hoyte $750 because he continued to operate the ziplines after the county issued an order to cease operations on September 1, 2010. At approximately the same time as defendant Hoyte was being ordered to cease operations at Heritage Farms Canopy Tours, the United States Forest Service began to receive more reports of ziplines being erected on the Property.
> On December 13, 2010, in a telephone conversation with United States Forest Service personnel, defendant Hoyte admitted that ziplines had been reinstalled and were operational.
> On December 14, 2010, United States Forest Service personnel visited the Property and confirmed that the ziplines had been reinstalled. In addition, U.S. Forest Service personnel observed that the construction of a suspension bridge was in progress.
> On December 16, 2010, United States Forest Service personnel visited the Property and observed, among other things, that new ziplines had been installed, that construction of a suspension bridge was continuing, and that the unauthorized roads and culverts constructed by defendants was causing additional erosion and damage to the Property.
> At no time has the United States Forest Service given defendants permission to undertake these activities on the Property. In addition, the United States is informed and believes that all of these activities have been undertaken without the permission of Skamania County.

Complaint ¶¶ 24-32.

## II. DISCUSSION

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, ___ U.S. ___, 129 S. Ct. 365, 374 (2008). The purpose of a temporary restraining order ("TRO") is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc., v. Bhd. of Teamsters & Auto Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

ORDER - 4

### A. Likelihood of Success on Merits

Defendants do not appear to have a valid reason for engaging in the alleged activities, which appear to violate the terms of the conservation easement. Indeed, Defendant's deed to the subject property is encumbered by the conservation easement, expressly identified in the purchase and sale agreement with the Grams. Defendants' apparent plans to operate a for-profit commercial enterprise does not appear to be contemplated by the express terms or the alleged intent of the easement as between the original grantors and grantees (i.e., the Grams and the United States), which seems to have been limited to agricultural and residential purposes.

Therefore, for purposes of granting a TRO, this factor is satisfied.

### B. Likelihood of Irreparable Harm

The United States alleges that, absent a TRO, irreparable environmental damage has occurred, is occurring, and will continue to occur as a direct and proximate result of the alleged activities of the Defendants on the subject property. Pam Campbell, a Forest Service Natural Resource Specialist, submitted a detailed declaration that articulates, among other things, the irreparable harm alleged. *See, e.g.,* Dkt. 3 at 9 (describing some of the environmental damage of which the United States complains). Campbell's declaration describes numerous activities undertaken by Defendants that have caused or will cause irreparable injury to flora, fauna, and land. The United States speculates that if permitted to continue these activities, Defendants will cause irreparable harm to vegetation and the overall stability of the land. The United States concludes, and the Court is inclined to agree that, absent a TRO, the purposes for which the conservation easement was granted in the first place will be undermined by the Defendants' alleged activities.

Therefore, for purposes of granting a TRO, this factor is satisfied.

**C.     Balance of Equities**

Defendants do not appear to have a legal basis for apparently violating the conservation easement. While not binding on this Court, Defendants have at least acknowledged by stipulation in Skamania County court that their activities violated the easement and could not continue without a valid permit. No evidence of obtaining the requisite permits has been shown to date. Therefore, it appears that Defendants are yet again engaging in self-help that violates the terms of the conservation easement for which their property is subject to and encumbered by according to provision 10(C) of their purchase and sale agreement for the subject property.

Therefore, for purposes of obtaining a TRO, the balance of equities weighs heavily in favor of granting the TRO.

**D.     Public Interest**

The United States appears to have purchased this conservation easement on behalf of its citizens. The public no doubt has an interest in its property remaining protected. The Court does not find a competing interest that would operate to permit Defendants to violate the terms of the conservation easement.

Therefore, for purposes of obtaining a TRO, the public's interest weighs heavily in favor of granting the TRO.

**E.     Conclusion**

Based on the foregoing, the Court concludes that the United States has satisfied the necessary requirements to obtain a TRO.

## III. ORDER

Therefore, it is hereby **ORDERED** that the United States' motion for temporary restraining order is **GRANTED**. Defendants are enjoined from

1.     Engaging in or allowing others to engage in any ground disturbing activities on the subject property, including, but not limited to, using, building or maintaining any roads or trails which were not in existence on April 13, 1995, the date of recording of the

Conservation Easement Deed between the United States and Defendants' predecessors in interest, cutting down or limbing any trees, or engaging in any other such activities associated with the construction of the suspension bridge or the construction or operation of ziplines on the subject property.

    2.    Engaging in or allowing others to engage in any construction activities on the subject property, including, but not limited to, any and all work on the suspension bridge, ziplines, zipline infrastructure, such as pulleys, brakes, platforms and cables, construction of improved road access to State Highway 14, or construction or improvement of any parking area on the subject property.

    3.    Operating or allowing others to operate any business concern on the subject property, including, but not limited to, allowing or inviting members of the general public to have access to the subject property in exchange for a payment of money or any other valuable consideration.

    4.    Using or allowing others to use either the suspension bridge or the ziplines that have been erected on the subject property.

    5.    Entering on or allowing others to enter upon any adjoining lands which are owned by the United States or to use those lands or the resources thereon without the express permission of the United States.

A hearing on Plaintiff's request for a preliminary injunction shall be set for **11:00 a.m. on January 5, 2010.** This retraining order shall remain in effect until that hearing. No bond is required. Fed. R. Civ. P. 65(c) (United States is exempt).

DATED this 22nd day of December, 2010.

                                              BENJAMIN H. SETTLE
                                              United States District Judge